UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| Student Doe 1 by and through his Parents/Guardians Does 1 and 2, et. al. | : : : : | |
| Plaintiffs | : : | Civil Action No. 09-2095 |
| V. | : : : | |
| The School District of Lower Merion | : : : | |
| Defendant | : | |

**PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANT, THE SCHOOL DISTRICT OF LOWER MERION'S RULE 12 MOTION**

Plaintiffs, Students Doe 1 through 9, now file the present Brief in order to comply with Rule 7.1 of the Rules of Civil Procedure of the United States District Court for the Eastern District of Pennsylvania, and in order to further explain their positions in opposition to defendant, School District of Lower Merion's pending Federal Rule 12 Motion.

I. **FACTUAL BACKGROUND**

On May 14, 2009, Students Doe, by and through their Parents/Guardians, filed a Three Count Complaint in the United States District Court for the Eastern District of Pennsylvania seeking to enjoin, both preliminarily and permanently, Lower Merion's school redistricting plan adopted on January 12, 2009. Students Doe contend in their Complaint that Lower Merion's redistricting plan intentionally and improperly used racial criteria in order to mandate that they be bused to a non-neighborhood high school, Harriton High School, instead of allowing them to continue to voluntarily choose to attend their neighborhood high school, Lower Merion High

School, or Harriton High School. Students Doe are all minority students in that they are all African American.

Students Doe contend that Lower Merion's actions violate the Fourteenth Amendment to the United States Constitution, 42 U.S.C. Section 1981, and Title VI of the Civil Rights Act, 42 U.S.C. Section 2000d et. seq. On June 8, 2009, Lower Merion filed a Motion pursuant to Rule 12 the Federal Rules of Civil Procedure objecting in various ways to the Civil Rights Complaint filed in this action.

## II. ARGUMENT

Lower Merion appears to seek relief in its pending Motion on four (4) different grounds. First, Lower Merion seeks dismissal of Students Doe's Civil Rights Complaint under Federal Rule 12(b)(1) contending they lack Article III standing. Second, Lower Merion seeks dismissal of Students Doe's Second Count, i.e. the claim for relief under 42 U.S.C. Section 1981, under Federal Rule 12(b)(6). Third, Lower Merion seeks dismissal of Students Doe's entire Complaint under Rule 12(b)(6). Finally, Lower Merion, to the extent relief is not given under the preceding claims, requests that this Honorable Court order Students Doe to file a more specific Complaint pursuant to Federal Rule 12(e).

An informed review of Lower Merion's cited caselaw, arguments, and legal analysis, indicates that no relief should be granted, and that Lower Merion should be directed to answer the pending Civil Rights Complaint forthwith. However, before reviewing Lower Merion's positions, a brief overview of the applicable standard of review as well as a few prefatory comments concerning the choice of caselaw cited are in order.

Regarding the standard for review, Lower Merion readily concedes on pages 2 and 3 of its Memorandum of Law that this Honorable Court must accept as true Students Doe's factual

allegations that appear in its Civil Rights Complaint for purposes of resolving the pending Motion, and that this Honorable Court must determine whether any relief is possible after reviewing the pending Complaint. The Complaint should be construed in the light most favorable to Students Doe. See e.g. Common Cause v. Pennsylvania, 558 F.3d 249, 253 (3d Cir. 2009). Students Doe's Complaint should not be dismissed unless it appears beyond doubt that they can prove no set of facts which would entitle them to relief. See e.g. Pryor v. National Collegiate Athletic Association, 288 F.3d 548, 559 (3d Cir. 2002).

Regarding Lower Merion's choice of caselaw, three (3) comments are appropriate. First, despite citing twenty five (25) cases or more in its Memorandum of Law, not a single case references in any way school redistricting and/or school busing. This is somewhat curious in light of the fact that this is the matter at issue, there are literally volumes of caselaw available, and the caselaw in the area gives guidance on at least one of the issues Lower Merion briefed.

Second, Lower Merion has failed to alert this Honorable Court to the United States Supreme Court's recent decision in Parents Involved in Community Schools v. Seattle School District No. 1, 127 S.Ct. 2738 (2007). This case which is barely two (2) years old now constitutes the controlling authority in the area of public school redistricting, the matter at issue herein, and sets forth in the course of the opinion exactly how Lower Merion's standing argument should be resolved.

Third, for some inexplicable reason, Lower Merion has a penchant for citing as authority throughout its Memorandum caselaw that should not be cited. For example, the opinions in Church of the Universal Brotherhood v. Farmington Township Supervisors, 296 Fed. Appx. 285 (3d Cir. October 20, 2008), and Schuldiner v. Kmart, 284 Fed. Appx. 918 (3d Cir. July 7, 2008), indicate that they should not be cited as precedential under Rule 5.7 of the United States Court of

Appeals for the Third Circuit's Internal Operating Procedures. The opinions in <u>Argueta v. U.S. Immigration and Customs Enforcement</u>, 2009 U.S. Dist. Lexis 38900 (D. NJ May 7, 2009), and <u>New Jersey Protection & Advocacy, Inc. v. Jennifer Velez</u>, 2008 U.S. Dist. Lexis 71254 (D. NJ September 9, 2008), both indicate that they are **not** for publication. The opinion in <u>John Doe v. Hartford Life and Accident Insurance Co.</u>, 237 FRD 545 (D. NJ 2006), states explicitly in its second paragraph that the Court "writes only for the parties." <u>Id.</u> at 547.

With the foregoing in mind, Students Doe now turn to Lower Merion's four Rule 12 objections. In light of the fact that Lower Merion's "psuedoname" argument is at issue in both its Federal Rule 12(b)(1) and 12(e) objections, it will be addressed first. Students Doe will then address more fully Lower Merion's Federal Rule 12(b)(1) objection before addressing the remaining Federal Rule 12(b)(6) objections.

Contrary to Lower Merion's assertions, Students Doe use of psuedonames is consistent with controlling law and practice. The undersigned counsel, in order to protect his clients' identities as required under Federal Rule 5.2 and Local Rule 5.1.3, filed the pending Civil Rights Complaint identifying the minor plaintiffs as "Student Doe" 1 through 9, and identifying the minor plaintiffs' parents/guardians as "Parent/Guardian Doe" 1 through 10. The psuedoname designations were ultimately chosen instead of individual initials in part because it was administratively easier to track who was who.[1]

Lower Merion's position concerning the use of psuedonames becomes even more mystifying in light of the fact that the undersigned counsel offered to provide each plaintiff's

---

[1] Any claim that counsel should have used initials instead of the psuedoname Doe ignores the provisions of Local Rule 5.1.3 which permits modification of names. Said claim also seeks to elevate form over substance. From a practical standpoint, unless Lower Merion is taking the position that it was going to canvass the South Ardmore neighborhood identified in Paragraph 8 of the Civil Rights Complaint for individuals with matching initials in order to make positive identifications, it is entirely irrelevant whether the undersigned counsel used initials or the psuedoname Doe.

4

name, address, school grade, and present school, so long as the parties entered into an appropriate Confidentiality Agreement. See letter from David G. C. Arnold, Esquire, to Kenneth A. Roos, Esquire, dated May 21, 2009 (A true and correct copy of said letter is appended hereto as Exhibit "A."). The undersigned counsel felt a Confidentiality Agreement was in order to protect "plaintiffs' privacy rights as required under Federal Law, and to further protect [plaintiffs] from harassment." Id. This Honorable Court's guidelines direct counsel to act in this fashion when confidential matters arise in the course of litigation. Moreover, entering into Confidentiality Agreements is the practice in this Federal District when confidential matters arise in order to expedite the flow of litigation.

Opposing counsel wrote back on May 22, 2009, and acknowledged that Lower Merion "is bound by law to protect the privacy of certain student information and educational records pursuant to the Family Educational Rights and Privacy Act, 20 U.S.C. Section 1232g; 34 C.F.R. Part 99 ("FERPA"). The District has always and will always comply with its FERPA obligations." See letter from Michael D. Kristofco, Esquire, to David G. C. Arnold, Esquire, dated May 22, 2009 (A true and correct copy of said letter is appended hereto as Exhibit "B."). However, Lower Merion stated in the aforementioned letter that there was no need for a Confidentiality Agreement. In short, Lower Merion has successfully "manufactured" the alleged harm it now seeks to redress by Motion.

The caselaw Lower Merion cites on the psuedoname issue is also somewhat suspect. First, none of the cases cited are even applicable in the situation presented in that they do not involve the representation of children, and/or predate or do not otherwise implicate the protections set forth in Federal Rule 5.2 or Local Rule 5.1.3. As noted previously, Schuldiner,

Argueta, New Jersey Protection & Advocacy, Inc., and John Doe v. Hartford Life and Accident Insurance, should not have even been cited.

Furthermore, Lower Merion's reliance on Doe v. Provident Life and Accident Insurance Company, 176 FRD 464 (ED Pa. 1997), is somewhat questionable. If one can look past the fact that the Provident Life Court never undertook an analysis of Federal Rule 5.2, an analysis of Local Rule 5.1.3, an analysis of the Family Educational Rights and Privacy Act, and/or considered the fact that children were involved, because those issues were not implicated in the case, one is still left with caselaw that is not nearly as absolute in its prohibition as Lower Merion presents. Lower Merion fails to advise this Honorable Court that the Provident Life Court ultimately held that plaintiff could proceed using a psuedoname.

Moreover, portions of the Provident Life Court's opinion are worth noting herein. The Court stated in the course of its opinion, "this Court finds that a party to a civil action—either defendant or plaintiff—may use a pseudonym when the circumstances of the case justify such use. Indeed, the overwhelming majority of jurisdictions to consider this question have determined that parties may proceed in pseudonym under particular circumstances…Federal courts have long approved the practice of pseudonymous litigation. The most famous example of pseudonymous litigation is Roe v. Wade, 410 U.S. 113, 35 L. Ed. 2d 147, 93 S.Ct. 705 (1973). In Roe, this Court finds the Supreme Court's implicit recognition of this practice." Id. at 466 (some citations omitted).

Lower Merion's analysis arguing against the use of psuedonames in this case is also without merit. Lower Merion argues that Students Doe should have disclosed their addresses in their Civil Rights Complaint. A review of the Federal Rules and Local Rules indicates there is no requirement for a party to disclose their address. In fact, a computer search done during the

preparation of this Brief indicated that the term "address" does not even appear in the Federal Rules. In light of the foregoing, the reference to Students Doe's neighborhood in Paragraph 8 of the Complaint goes beyond what is required under controlling Federal Rules and controlling Local Rules.

Lower Merion argues that Parents/Guardians Does' identities must be disclosed in the Civil Rights Complaint even though their children may not have to be identified is equally without merit when thought through. In light of the fact that children typically share the same surname as one or both of their parents, identifying a parent by name in a Complaint would eviscerate the protections contemplated in Federal Rule 5.2 and Local Rule 5.1.3. Any suggestion that Students Doe had to file this action in their own names first, and then seek protection later, begs the question whether Pandora was ever able to get everything back into the box.

Lower Merion's contentions that it cannot adequately and fully participate in discovery indicates a fundamental misunderstanding of the matters being litigated in this case. All of the important evidence in this case is in Lower Merion's possession. The only evidence Students Doe have to offer is the fact that they are minorities, that they attend Lower Merion's schools, and that they got redistricted. These averments are all clearly set forth in Paragraphs 9, 10, 70, 75, and 82, of the Civil Rights Complaint.

Lower Merion's reference to the pending administrative action at the Office of Civil Rights for the Federal Department of Education is somewhat confusing. Under controlling Federal Regulations, Lower Merion is not supposed to know the names of any individual who filed an Administrative Complaint against it. See 34 C.F.R. Section 100.7(e). Therefore, knowing the names of Students Doe is irrelevant, because Lower Merion cannot match up said

names with the names of those individuals that filed an Administrative Complaint. Furthermore, logic dictates that any relief Lower Merion wants on the administrative action has to come from the Office of Civil Rights, not this Honorable Court.

Clearly, if Students Doe have acted in accordance with the controlling Federal Rules, and controlling Local Rules, there simply is no basis to afford Lower Merion any relief whatsoever. Even if one of Lower Merion's arguments is found to be plausible, it is still appropriate to allow Students Doe and Parents/Guardians Doe to proceed in this action using psuedonames for two (2) reasons.

First, as Lower Merion has already acknowledged, in addition to the protections afforded by Federal Rules and Local Rules, Students Doe have educational privacy rights that need protection in accordance with the Family Educational Rights and Privacy Act. Second, the redistricting process at issue in this case has been contentious and volatile for months. See Letter to Community from Christopher McGinely, Superintendent of Lower Merion, dated January 15, 2009 (A true and correct copy of said letter is appended hereto as Exhibit "C."). Disclosing personal information and the whereabouts of Students Doe and/or Parents/Guardians Doe is an open invitation for unwarranted harassment which no one should have to bear when seeking to enforce their Civil Rights.

It is now time to address more fully Lower Merion's Title III standing argument. As noted previously, the United States Supreme Court's decision in Seattle School District No. 1, 127 S.Ct. 2738, has already resolved this issue in Students Doe's favor. Seattle School District No. 1 is actually a consolidation of two (2) different cases involving student assignment plans from Seattle, Washington, and Louisville, Kentucky. The Seattle Plan set up a system whereby

students would apply to a high school or high schools, and then be assigned a placement based upon a preference system that was found to be unconstitutional.

The Seattle School District raised Article III standing arguments contending, as Lower Merion does herein, that those individuals bringing suit could claim no imminent injury, and that the risk that they would suffer future harm was too speculative. Seattle School District No. 1, 127 S.Ct. at 2750-2751. Chief Justice Roberts rejected this very argument in his plurality opinion finding that the Article III standing requirement had been met because plaintiff group had members with children in Seattle's elementary and middle schools who may be denied admission to the high school of their choice. Id. The Chief Justice went on to find an additional basis to grant Article III standing stating "As we have held, one form of injury under the Equal Protection Clause is being forced to compete in a race-based system that may prejudice the plaintiff." Id. In light of the foregoing, Students Doe do have Article III standing because they attend Lower Merion's elementary and middle schools, and they have been redistricted. See Paragraphs 8, 9, 10, 53, and 60, of the Civil Rights Complaint.

Even if one could ignore the clear dictates of Seattle School District No. 1, Students Doe stand ready to present testimony that one plaintiff is an eighth grade student, and that said plaintiff will be bused to Harriton High School in September of 2009 due to Lower Merion's redistricting plan. This would in effect satisfy the standing requirement Lower Merion raises in its pending Motion.

Resolution of Lower Merion's Federal Rule 12(e) and 12(b)(1) claims leaves only the two (2) Federal Rule 12(b)(6) claims to be discussed. Lower Merion's first Federal Rule 12(b)(6) challenge concerns the cause of action asserted in Count II of the Civil Rights Complaint, i.e. the claim filed under 42 U.S.C. Section 1981. Lower Merion argues that there is no private right of

action under 1981, rather such claims must be brought pursuant to 42 U.S.C. Section 1983 citing McGovern v. Philadelphia, 554 F.3d 114 (3d Cir. 2009).

This argument has no application in the present case in that Students Doe are seeking relief in Count II pursuant to 42 U.S.C. Section 1983. In Paragraphs 74 through 76 of their Civil Rights Complaint, Students Doe contend that Lower Merion's actions violate 42 U.S.C. Section 1981. In Paragraph 77 of their Complaint, Students Doe clearly indicate that they are seeking to address the Section 1981 violation under 42 U.S.C. Section 1983.

Lower Merion's second Federal Rule 12(b)(6) challenge seeks the dismissal of all of the Counts in Students Doe's Federal Civil Rights Complaint arguing that Students Doe have not plead intentional discrimination. This argument is unavailing in light of controlling Federal Rules regarding pleading, and in light of the allegations set forth in the Civil Rights Complaint.

Rule 8 of the Federal Rules of Civil Procedure mandates that a Complaint must contain: (1). a short and plain statement of the grounds for the Federal Court's jurisdiction; (2). A short and plain statement of the claim showing the pleader is entitled to relief; and (3). A demand for relief. Students Doe's claims do not fall into the category of claims covered by Rule 9 of the Federal Rules of Civil Procedure which sets forth additional pleading requirements. As the very caselaw cited by Lower Merion indicates, there is no heightened pleading requirement in Civil Rights cases. See Pryor v. National Collegiate Athletic Association, 288 F.3d at 564.

Students Doe identified the jurisdictional bases for their claims in Paragraph 16 of their Civil Rights Complaint. Students Doe averred intentional discrimination as well as the facts to support such a claim throughout their Complaint. See Paragraphs 25, 26, 29, 34, 36, 38, 39, 43, 45, 48, 50, 53, 56, 58, 60, 62, 63, 65, 66, 69-72, 74-77, and 79-85, of the Civil Rights Complaint.

Students Doe demand appropriate relied in the ad danum clauses following each Count of their Complaint.

### III. Conclusion

For all the reason set forth in the preceding section of this Brief, Students Doe respectfully request that this Honorable Court dismiss Lower Merion's pending Federal Rule 12 Motion, and direct Lower Merion to answer the pending Civil Rights Complaint within ten (10) days.

                                    Respectfully submitted,

                                    _____
                                    David G. C. Arnold

Pennsylvania Attorney Identification No. 49819

Suite 109, Royal Plaza
915 Montgomery Avenue
Narberth, Pennsylvania 19072
(484) 562-0008

Attorney for Plaintiffs

Dated: June 12, 2009

11