# DAVID G. C. ARNOLD, ESQUIRE
### SUITE 106, 920 MATSONFORD ROAD
### WEST CONSHOHOCKEN, PENNSYLVANIA 19428
### TELEPHONE (610) 397-0722
### TELEFAX (610) 397-0723
### DAVIDGCARNOLD@AOL.COM
June 11, 2010

<u>VIA TELEFAX</u>
The Honorable Michael M. Baylson
Room 3810 United States Courthouse
601 Market Street
Philadelphia, Pennsylvania 19106

Re: <u>Student Doe v. Lower Merion School District,</u> United States District Court for the Eastern District of Pennsylvania, Civil Action No. 092095

Dear Judge Baylson:

This letter is written at the invitation of this Honorable Court in order to comment on points raised during the oral argument on the Post Trial Briefs of the respective parties. Students Doe wish to address five (5) points herein.

First, the Court inquired during argument whether a private cause of action exists under Title VI of the Civil Rights Act and/or 42 U.S.C. 1981. The law is clear that a private cause of action exists under Title VI. See <u>Gonzaga University v. John Doe</u>, 536 U.S. 273, 284 (2002)("We have recognized, for example, that Title VI of the Civil Rights Act of 1964 and Title IX of the Education Amendments of 1972 create individual rights...." <u>Id.</u> (internal quotations and citations omitted)); <u>Barnes v. Gorman</u>, 536 U.S. 181, 185 (2002)("Although Title VI does not mention a private right of action, our prior decisions have found an implied right of action...and Congress has acknowledged this right in amendments to the statute, leaving it beyond dispute that private individuals may sue to enforce Title VI...." <u>Id.</u> (internal quotations and citations omitted)). A private right of action is also available under 42 U.S.C. Section 1981 against a state actor so long as the action is brought under 42 U.S.C. Section 1983. <u>See</u>

The Honorable Michael M. Baylson
June 11, 2010                                                                                    Page **2** of **5**

McGovern v. Philadelphia, 554 F.3d 114 (3d Cir. 2009). Students Doe properly brought their

Section 1981 action under 42 U.S.C. Section 1983. See Count III of Students Doe's Complaint

filed on May 14, 2009.

Students Doe agree with opposing counsel that the Supreme Court has indicated that the

protections set forth in Title VI and 42 U.S.C. Section 1981 are co-extensive with the protections

set forth in the Fourteenth Amendment to the United States Constitution. However, Students Doe

contend that this finding should be re-examined for the reasons set forth in their Brief in Support

of their Preliminary Injunction filed on June 12, 2009, at pages 7-9, and for the reasons set forth

in their Brief in Opposition to Defendant's Motion for Summary Judgment filed on January 14,

2010, at pages 20-22, as well as in light of the Supreme Court's recent decision in Ricci v.

DeStefano, 129 S. Ct. 2658 (2009).

Second, during the course of argument, opposing counsel requested that the Court review

Comfort v. Lynn School Committee, 418 F.3d 1 (1st Cir. 2005). However, a review of Parents

Involved in Community Schools v. Seattle School District No. 1, 551 U.S. 701(2007), after a

review of Lynn School Committee, will reveal that the latter case was overruled by Seattle

School District. Id. at 724-725 (Section III A of Chief Justice Roberts' opinion).

Third, when questioned on the strict scrutiny standard, Students Doe took the position

that said level of review was proper in light of Seattle School District, and other recent Supreme

Court precedent involving state action wherein race was a factor in decision-making. The Court

correctly noted that in Seattle School District, students were individually assigned to schools

while in the present case a "targeted" neighborhood had been assigned to a school. Students Doe

take the position that this factual distinction should not deter the Court from applying strict

scrutiny.

The Honorable Michael M. Baylson
June 11, 2010

Initially, the language in all of the recent Supreme Court caselaw directing the application of strict scrutiny is extremely broad, and demands its use whenever race is a factor in government decision-making. See e.g. Seattle School District, 551 U.S. at 720 ("It is well established that when the government distributes burdens or benefits on the basis of individual racial classifications, that action is reviewed under strict scrutiny." Id.); Johnson v. California, 543 U.S. 499, 506 (2005) ("We therefore apply strict scrutiny to **all** racial classifications to 'smoke out' illegitimate uses of race by assuring that [government] is pursuing a goal important enough to warrant use of a highly suspect tool." Id. (emphasis added)); Adarand Constructors, Inc. v. Pena, 515 U.S. 200, 227 (1995)("Accordingly, we hold today that **all** racial classifications, imposed by **whatever** federal, state, or local governmental actor, must be analyzed by a reviewing court under strict scrutiny." Id. (emphasis added)); Gratz v. Bollinger, 539 U.S. 244, 270 (2003) ("It is by now well established that **all racial classifications reviewable under the Equal Protection Clause must be strictly scrutinized**." Id. (emphasis added)(internal citations and quotations omitted)).

Moreover, the fact that the districting plan at issue does not assign students individually, but used race as a factor in targeting a neighborhood for redistricting, does not mean that strict scrutiny is inapplicable. Rather, it demonstrates why strict scrutiny should be applied, and why governmental action that "mechanically" factors in race should be struck down. Preliminarily, from a legal standpoint, the entire matter begs the question, why should a school district be permitted to do to an entire neighborhood that which it would be prohibited from doing to individuals within the given neighborhood?

Although there is no reported case presenting a factual scenario identical to the present case, analytically Gratz v. Bollinger, 539 U.S. 244 (2003), presents the same legal issue as the

The Honorable Michael M. Baylson
June 11, 2010

present case, i.e. whether a government entity may use race in a non-individualized manner as a factor in making student acceptances or student assignments. In Gratz, non-minority applicants to the University of Michigan filed suit over an undergraduate admissions policy that automatically gave minority applicants bonus points in the admissions process. The Supreme Court struck down the admissions policy applying strict scrutiny finding that such a "mechanical" use of race was impermissible. Id. Lower Merion's use of race is no less "mechanical," i.e. targeting a neighborhood because of its high concentration of African American students, and deserves the same fate as Michigan's undergraduate admissions policy.

Fourth, during the course of argument, the Court questioned the undersigned counsel concerning the "predominant factor" test in Bush v. Vera, 517 U.S. 952 (1996). The Bush case involved allegations of racial gerrymandering in the creation of new voting districts in Texas. The critical distinction between Bush and the present case is that the Supreme Court has not adopted the "predominant factor" test in the educational context despite ample opportunity to do so. See Seattle School District, 551 U.S. 701; Grutter v. Bollinger, 539 U.S. 306 (2003); Gratz v. Bollinger, 539 U.S. 244. This fact, coupled with the fact that all of the Justices involved in Seattle School District analyzed the case under strict scrutiny, confirms that the "predominant factor" test should not be applied. See Students Doe's Post Trial Brief at pages 10-11.

Finally, the following supplemental points should be noted regarding the "Good Schools" issue. The evidentiary record at trial establishes that at least one School Director, Diane DiBonaventuro, recognized that moving children from the affected area to Harriton High School harms them. See Exhibit P-104. As this Court has already found, race was a factor in creating that harm.

The Honorable Michael M. Baylson
June 11, 2010

Additionally, the Supreme Court's discussions of the inherent harm race based decision-making creates cannot be ignored. Chief Justice Roberts stated in Seattle School District that "one form of **injury** under the Equal Protection Clause is being forced to compete in a race based system that may prejudice the plaintiff." Seattle School District, 551 U.S. at 719 (emphasis added) (Part II of Chief Justice Roberts' Opinion). The Supreme Court stated in Johnson, "As we have recognized in the past, racial classifications threaten to stigmatize individuals by reason of their membership in a racial group and to incite racial hostility." Johnson v. California, 543 U.S. at 507 (internal citations and quotations omitted). The Supreme Court also stated in Grutter, "As we have explained, whenever the government treats any person unequally because of his or her race, that person has suffered **an injury** that falls squarely within the language and spirit of the Constitution's guarantee of equal protection." Grutter, 539 U.S. 327 (emphasis added) (internal citations and quotations omitted). Justice Thomas notes in his concurrence in Seattle School District, "Disfavoring a color-blind interpretation of the Constitution, the dissent would give school boards a free hand to make decisions on the basis of race—an approach reminiscent of that advocated by the segregationists in Brown....This approach is just as wrong today as it was a half-century ago." Seattle School District, 551 U.S. at 748.

For all of the foregoing reasons as well as for the reasons expressed in their Post Trial Brief, Students Doe respectfully request that a verdict be rendered in their favor.

Respectfully submitted,

_David G. C. Arnold_

cc Judith Harris, Esquire via Telefax
   Christina Joy F. Grese, Esquire via Telefax